# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

THONGSAVAHN RODTHONG,

Petitioner,

v.                                              Case No. 15-CV-1438

JENNIFER MCDERMOTT,[1]

Respondent.

# REPORT AND RECOMMENDATION

## 1. Facts and Procedural History

On December 13, 2009, three people robbed the Happy Wok restaurant in Wauwatosa. (ECF No. 9-2 at 12 (all citations reflect the ECF pagination).) In a search for additional money, the three then burglarized the home of the restaurant's owner. (ECF No. 9-2 at 12.) After being confronted by a police officer as they attempted to flee the home, one of the robbers shot the police officer, striking her in the abdomen. Three

---

[1] Rodthong is incarcerated at the Kettle Moraine Correctional Institution. See Offender Locator, Wisconsin Department of Corrections, available at https://appsdoc.wi.gov/lop/detail.do (last visited June 5, 2019). The warden of this institution is Jennifer McDermott. *See* https://doc.wi.gov/Pages/OffenderInformation/ AdultInstitutions/KettleMoraineCorrectionalInstitution.aspx. Therefore, in accordance with Rule 2(a) of the Rules Governing Section 2254 Cases and Fed. R. Civ. P. 25(d), the caption is updated accordingly.

suspects, including Thongsavahn Rodthong, were arrested and charged with various offenses, including armed robbery, burglary, and attempted murder.

Rodthong eventually resolved the charges by pleading guilty to two counts of robbery with use of force, Wis. Stat. § 943.32(1)(a), while armed, Wis. Stat. § 939.63(1)(b).[2] (ECF No. 1-2 at 1.) He was sentenced to 12 years of initial confinement plus five years of extended supervision as to each count, to be served consecutively. (ECF No. 1-2 at 1.)

Rodthong was appointed appellate counsel, who concluded that Rodthong did not have any potentially meritorious claims for an appeal. (ECF No. 9-2 at 54-56.) Rodthong then hired an attorney to represent him on appeal, who filed a motion asking that Rodthong be allowed to withdraw his guilty pleas. (*See* ECF No. 12-3 (transcript of hearing on motion).) The court denied the motion. (ECF No. 12-3 at 60-67.) Dissatisfied with his retained attorney's performance, Rodthong informed him that he no longer wanted his representation. (ECF No. 9-10.) The attorney moved to withdraw and requested that counsel again be appointed to represent Rodthong on appeal. (ECF No. 9-11.)

---

[2] Rodthong was not convicted of "armed robbery," which is a Class C felony, Wis. Stat. § 943.32 (2009-10), and thus punishable by up to 40 years imprisonment, Wis. Stat. § 939.50(3)(c). Rather, through his plea agreement he pled guilty to robbery – use of force, a Class E felony, Wis. Stat. § 943.32(1)(a), albeit with the "use of a dangerous weapon" enhancer, Wis. Stat. § 939.63(1)(b).The result was that through this plea agreement he cut in half his maximum punishment regarding each robbery count (15 years as to the Class E felony, Wis. Stat. § 939.50(3)(e), plus five years under the "use of a dangerous weapon" enhancer, Wis. Stat. § 939.63(1)(b)).

Before ruling on the motion, the court requested input from the State Public Defender, which stated that Rodthong had been told that, if he discharged his appointed counsel and retained private counsel, it would not again appoint counsel for Rodthong on appeal. (ECF Nos. 9-12; 9-16.) Therefore, it stated it would not re-appoint counsel if his retained attorney withdrew. (ECF Nos. 9-12; 9-16.) Rodthong discharged his retained attorney anyway and asked the court to appoint another attorney for him. (ECF No. 9-18.) The court denied the motion, noting that Rodthong discharged two lawyers after being specifically told that new counsel would not be appointed to represent him if he did so. (ECF No. 9-19.)

The circuit court denied a subsequent motion for reconsideration (ECF No. 9-21), and the court of appeals likewise denied his request for the reappointment of counsel (ECF No. 9-25). He sought a writ of mandamus from the Wisconsin Supreme Court, ordering the court of appeals to appoint counsel. (ECF No. 9-26.) The court denied the petition. (ECF No. 9-27.)

Therefore, Rodthong appealed his conviction pro se. The court of appeals affirmed his conviction (ECF No. 1-3) and the Wisconsin Supreme Court denied review (ECF No. 1-4).

## 2. Petitioner's Claims

Rodthong presents two claims for relief in his petition. First, he argues that he was denied his constitutional right to counsel on his initial appeal. (ECF No. 1 at 7-9.) Second,

he argues his pleas were not knowing, intelligent, and voluntary because his attorney did not inform him that "read-in crimes" could be considered at sentencing or that restitution could be ordered. (ECF No. 1 at 7, 9-11.) Related to this claim, although not explicitly articulated as a claim in his petition, Rodthong argues in his brief that his plea was un-knowing because of errors by his trial counsel. Thus, in conjunction with his claim that his plea was not knowing, Rodthong argues that his trial counsel was ineffective. (ECF No. 12 at 12-15.)

### 3. Standard of Review

A federal court may consider habeas relief for a petitioner in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Following the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court generally may grant habeas relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Miller v. Smith*, 765 F.3d 754, 759-60 (7th Cir. 2014) (quoting 28 U.S.C. § 2254(d)(1), (2)).

## 4. Analysis

### 4.1. Guilty Plea

"It is beyond dispute that a guilty plea must be both knowing and voluntary." *Parke v. Raley*, 506 U.S. 20, 28 (1992). "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). This requires the defendant to have "(1) full awareness of the plea's direct consequences; (2) real notice of the true nature of the charge against him; and (3) an understanding of the law in relation to the facts." *Jurjens v. Dittman*, No. 14-cv-462-jdp, 2018 U.S. Dist. LEXIS 125841, at *8 (W.D. Wis. July 27, 2018) (internal quotation marks and citations omitted) (quoting *Brady v. United States*, 397 U.S. 742, 747-48 (1970); *Henderson v. Morgan*, 426 U.S. 637, 645 (1976); *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). "If the plea is not voluntary and knowing, then it violates due process, and is thus void." *United States v. Gilliam*, 255 F.3d 428, 433 (7th Cir. 2001).

Claims of ineffective assistance of counsel are governed by the well-established two-prong approach set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hicks v. Hepp*, 871 F.3d 513, 525 (7th Cir. 2017). A petitioner must demonstrate both that his attorney's performance was deficient and that he was prejudiced as a result. *Id.* at 525-26. The first prong "requires that the petitioner demonstrate that counsel's representation fell below an objective standard of reasonableness." *Id.* at 525. "What is objectively

reasonable is determined by the prevailing professional norms." *Id.* But there is a wide-range of permissible conduct, and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (quoting *Strickland*, 466 U.S. at 690). The prejudice prong "requires the petitioner to demonstrate a 'reasonable probability that, but for counsel's unprofessional errors,' the outcome would have been different." *Id.* at 526 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009)).

When a claim of ineffective assistance of counsel is presented in a habeas petition, the petitioner faces "a high hurdle." *Id.* "The Supreme Court has instructed that under these circumstances, [the federal court] must employ a 'doubly deferential' standard, one which 'gives both the state court and the defense attorney the benefit of the doubt.'" *Id.* (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013)).

### 4.1.1.  Restitution

Under Wisconsin law, there is no requirement that a defendant be advised that he might be ordered to pay restitution if he pleads guilty. *State v. Dugan*, 193 Wis. 2d 610, 624, 534 N.W.2d 897, 902 (Ct. App. 1995). Although a defendant must be informed of the "direct" consequences of his guilty plea, *Brady*, 397 U.S. at, 755, the Wisconsin Court of Appeals concluded restitution is a collateral consequence (ECF No. 1-3, ¶ 18).

Rodthong argues that "lower federal courts agree that restitution is a direct consequence of a guilty plea" (ECF No. 12 at 11), but the cases he cites in support of this

contention, *United States v. Fox*, 941 F.2d 480, 484 (7th Cir. 1991) and *Wilson v. Furlong*, No. 91-1195, 1991 U.S. App. LEXIS 27780, at *10 (10th Cir. Nov. 14, 1991), were discussing Fed. R. Crim. P. 11 and its requirement that defendants pleading guilty to *federal* crimes be advised of "the court's authority to order restitution," Fed. R. Crim. P. 11(b)(1)(K). That federal procedural rule has no applicability in state prosecutions.

Rodthong also quotes *Morales v. Boatwright*, 580 F.3d 653, 662 (7th Cir. 2009), as saying, "Before the court accepts a plea of guilty … the court must inform the defendant of, and determine that the defendant understands … the court's authority to order restitution." (ECF No. 12 at 11.) Although this is an accurate quotation of Fed. R. Crim. P. 11, *Morales* says no such thing; the word "restitution" never appears in the decision.

The Supreme Court having never said otherwise, the Wisconsin Court of Appeals reasonably concluded that restitution is a collateral consequence of a conviction. Thus, the court of appeals' decision that restitution is a collateral consequence is not contrary to or an unreasonable application of clearly established federal law. And the Constitution does not require a defendant be advised of such collateral consequences before pleading guilty. *Virsnieks v. Smith*, 521 F.3d 707, 715 (7th Cir. 2008).

Viewed through the lens of alleged ineffective assistance of counsel, the court finds this claim lacks merit. No basis exists for concluding that Rodthong's trial counsel was deficient for not telling him that he might be ordered to pay restitution if he pled guilty.

Wisconsin law is clear that a defendant need not be informed of his restitution obligation for his plea to be knowing.

Moreover, there is no basis for concluding that Rodthong was prejudiced. "In the context of a guilty plea, a petitioner demonstrates prejudice by 'show[ing] that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Prejudice does not depend upon the petitioner being able to prove that "had he gone to trial, the result of that trial would have been different than the result of the plea bargain." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (internal quotation marks omitted).

Rodthong argues that, if he had known he might be found jointly and severally liable for $370 in restitution, he would have rejected the plea offer and insisted on trial. But he was facing over 150 years in prison if convicted at trial. The notion that the prospect of having to pay $370 would have led him to reject an offer that cut this potential punishment by more than two-thirds is wholly unbelievable. Thus, Rodthong has failed to demonstrate a reasonable probability that, if he had known of the prospect of restitution, he would have insisted on trial. *See Perrone*, 889 F.3d at 908.

### 4.1.2. "Read-In" Crimes

Under Wisconsin law, there are two types of dismissals of criminal charges. A charge may either be "dismissed" or "dismissed but read in." Wisconsin law regarding

read-in charges has been complex, nuanced, and at times contradictory. *See State v. Straszkowski*, 2008 WI 65, ¶58, 310 Wis. 2d 259, 750 N.W.2d 835. When a charge is "dismissed but read in," the defendant agrees that the

> circuit court may consider the read-in charge when imposing sentence but the maximum penalty of the charged offense will not be increased; a circuit court may require a defendant to pay restitution on the read-in charges; and a read-in has a preclusive effect in that the State is prohibited from future prosecution of the read-in charge.

*Id.* at ¶ 93.

A charge that is simply dismissed is "dismissed outright." *State v. Frey*, 2012 WI 99, ¶43, 343 Wis. 2d 358, 817 N.W.2d 436. Unlike a charge that is "dismissed but read in," a defendant does not agree that the court may consider at sentencing the allegations underlying the dismissed charge. But that does not mean that the court is prohibited at sentencing from considering allegations underlying the dismissed charge. At sentencing the court must consider the defendant's character, and as part of that assessment the court "may consider uncharged and unproven offenses." *Id.* at ¶¶ 46-47 (quoting *State v. Leitner*, 2002 WI 77, ¶45, 253 Wis. 2d 449, 646 N.W.2d 341). The difference between charges that are dismissed but read in and those that are simply dismissed is that, as to the latter, the defendant retains the ability to dispute the underlying allegations should they

become relevant at sentencing.[3] It will then be up to the court to decide if the allegations are sufficiently reliable to merit consideration in its sentencing determination.

Rodthong argues his plea was involuntary because he did not know that the dismissed charges would be "read in."  But there were no read-in charges. Because there were no read-in charges, they could not have undermined the voluntariness of his guilty plea.

Perhaps Rodthong is simply erring in his use of legal nomenclature and mislabeling his claim as one regarding a "read-in" crime. Liberally construing his claim in light of his pro se status, maybe he is arguing more broadly that his plea was not knowing because he did not understand that the court might consider his alleged involvement in uncharged conduct when imposing sentence.

But such a reconstruction of his claim fails because the record is clear that he *was* informed of this before he pled guilty. When discussing the offenses that were not included in the amended information, the prosecutor said, "Yeah, there is something we do have to clear up. At the time of sentencing I am going to argue about the defendant's involvement in the burglary and it's supposed to be considered as sort of a read-in." (ECF No. 9-8 at 2-3.) This statement from the prosecutor forms the basis for Rodthong's mistaken understanding that there were "read in" charges. But it shows that Rodthong

---

[3] Also, unlike a charge that is dismissed but read in, a charge that is simply dismissed cannot be considered with respect to restitution.

knew before he pled guilty that his alleged involvement in the burglary would be relevant at sentencing.

Therefore, the court finds no basis upon which to conclude that Rodthong's guilty plea was not knowing. Similarly, because he was informed that dismissed crimes might be considered at sentencing, he could not have been prejudiced by trial counsel not advising him of how those allegations may remain relevant. As a result, the court concludes Rodthong is not entitled to relief on his claim regarding his guilty plea.

### 4.2. Right to Counsel on Appeal

"The Sixth and Fourteenth Amendments guarantee criminal defendants the effective assistance of counsel during their first appeals as of right." *Reynolds v. Hepp*, 902 F.3d 699, 704 (7th Cir. 2018) (citing *Evitts v. Lucey*, 469 U.S. 387, 393-94, 396-97 (1985); *Douglas v. California*, 372 U.S. 353, 356-57 (1963)). However, indigent defendants are not entitled to counsel of their choice. *Miller v. Smith*, 765 F.3d 754, 760 (7th Cir. 2014) (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006)).

Rodthong was initially appointed an assistant public defender to represent him on appeal. In a letter dated August 19, 2011, that attorney memorialized a discussion he had had with Rodthong in which he explained to Rodthong why he believed Rodthong had no meritorious issues for appeal. (ECF No. 9-2 at 54-56.) He went on to explain, in detail, Rodthong's options. First, Rodthong could tell the attorney to close his file, in which case

no appeal would be filed and, if Rodthong did have any meritorious claims, he would be giving them up. (ECF No. 9-2 at 54.) The case would be over. (ECF No. 9-2 at 54.)

Second, Rodthong could hire a private lawyer. However, his attorney advised him, "You would not get another appointed attorney in this case." (ECF No. 9-2 at 55.)

Third, Rodthong could be his own lawyer. But he was cautioned, "If you act as your own lawyer, the court will expect you to follow all of the rules for appeals and post-conviction motions. These rules can be difficult to follow so I generally recommend against being your own lawyer. … Unless there are extraordinary circumstances, you would not get another lawyer appointed in this case even if you tried being your own lawyer and later decided it was too hard." (ECF No. 9-2 at 55.)

Fourth, the attorney could file a no-merit report that would include Rodthong's claims as to what Rodthong thinks is wrong in his case and the attorney's view as to why he does not believe there is any merit to Rodthong's claims. Counsel advised Rodthong that he could file a response to the attorney's no-merit report, explaining why he thinks the attorney is wrong. The court of appeals would then review the case and decide whether any claim has merit. (ECF No. 9-2 at 55.)

The letter from the Assistant State Public Defender to Rodthong concluded by stating that,

> [a]fter discussing these options, you said that you wanted to try and hire your own attorney so that you can preserve your rights and withdraw your pleas. You asked for a few weeks to get money together, and try to find an attorney to take the case. I said that I will request a sixty day extension from

the court, and I will call you in three weeks to check-in on whether you have an attorney to hire. If you cannot get an attorney, we can figure out what you want to do with this appeal.

(ECF No. 9-2 at 56.)

Rodthong opted to hire private counsel, Attorney Peter Heflin, although it is unclear when he did so.  A hearing on Rodthong's motion for post-conviction relief was held on December 7, 2012. (ECF No. 12-3.) On January 17, 2013, Rodthong wrote a letter to Heflin harshly criticizing his performance at the hearing and afterward. (ECF No. 9-10.) The letter concluded, "As such I must dismiss your services and demand that you release forthwith release [sic] all of my criminal records and files." (ECF No. 9-10 at 2.)

In a motion filed January 23, 2013, Heflin moved to withdraw from representing Rodthong and asked the court to "instruct the State Public Defender's Office to appoint the defendant an attorney to handle defendant's appeal." (ECF No. 9-11.) In a report filed with the court dated February 11, 2013, the "Regional Attorney Manager" for the State Public Defender stated:

Mr. Rodthong was informed that if he chose to discharge appointed counsel …and privately retain an attorney, that he would not get another appointed attorney in this case. After that advisement, Mr. Rodthong discharged appointed counsel and privately retained [counsel]. As Mr. Rodthong was previously advised, the State Public Defender will not re-appoint counsel for Mr. Rodthong in this appeal.

(ECF No. 9-12 at 1.)

The following day, the circuit court entered an order that noted that the State

Public Defender would not be appointing new counsel. The court went on to advise

Rodthong of the risks of self-representation:

> Because it is unclear whether the defendant has carefully considered the consequences of proceeding *pro se*, the court will apprise him of some of the risks of proceeding *pro se*, and then ask him to state how he wishes to proceed.
>
> First, the court informs the defendant that he will be solely responsible for complying with all rules of appellate procedure and for timely filing briefs or motions. He will be responsible for filing any motion in timely fashion, observing the local filing rules, obtaining any necessary extensions in the appropriate court, presenting evidence or argument, and arranging for the appearance of any necessary witnesses. If he pursues an appeal, he will be required to draft and file the appropriate number of copies of a brief in the Court of Appeals, all of which must comply with Rule 809.19, Wis. Stats., as to content, form, and length. All briefs must be coherent with arguments set forth that are supported by references to the record and to legal authority.
>
> Second, if the defendant decides to proceed pro se, but fails to raise all issues in his initial postconviction motion or appeal, he is advised that he may be precluded from filing a postconviction motion later on which raises additional issues that he has researched. *State v. Escalona-Naranjo*, 185 Wis.2d 169, 179 (1994). Section 974.06(4), Wis. Stats., requires a defendant to raise all grounds for postconviction relief in his original motion or appeal. Failure to do so precludes a defendant from raising additional issues, including claims of constitutional or jurisdictional violations, in a subsequent motion or appeal where those issues could have been raised previously. *Escalona, supra*.
>
> Third, the court informs the defendant that if postconviction/ appellate counsel is permitted to withdraw, the State Public Defender's office will not appoint successor counsel. This court will not interfere with that decision.
>
> If the defendant decides not to proceed *pro se*, Attorney Heflin is responsible for making strategic decisions related to the defendant's case. If there is no arguable merit to an appeal, counsel may file a no merit report pursuant to Rule 809.32, Wis. Stats., to which the defendant may respond

raising issues of his own. *See State ex rel. Flores v. State*, 183 Wis.2d 587, 605-607, 516 N.W.2d 362 (1994).

> If the defendant decides to continue with counsel in light of the decision made by the State Public Defender's office not to appoint successor counsel, he should so indicate to the court. If not, he should indicate to the court that he intends to proceed *pro se*. After the court receives the defendant's response, it will either issue an order granting counsel's motion to withdraw as appointed counsel or an order denying the motion. If the defendant does not respond, the motion will be granted.

(ECF No. 9-13.)

On February 28, 2013, Rodthong responded. (ECF No. 9-14.) He stated that he "has indicated dissatisfaction [sic] with several aspects of attorney Heflin's representation which may give rise to disciplinary review, and further proceedings prior to direct appeal in this case .… Consequentially, attorney Heflin's continued representation may constitute a conflict of interests." (ECF No. 9-14 at 2.) He continued:

> The defendant intends to exercise his rights to direct appeal and appointment of counsel because he is unqualified to proceed without the assistance of appointed counsel. Defendant is indeed a novice at law, and lack even a basic education. Defendant also has demonstrated to this Court difficulty in communicating in the English language and has required the assistance of an interpreter.

(ECF No. 9-14 at 2.) Rodthong acknowledged that he was advised that the State Public Defender would not appoint successor counsel if he discharged his first attorney but noted that he was told it might do so if there were "extraordinary circumstances." (*Id*. at 3.) He argued that such extraordinary circumstances existed—specifically, his "unexpected indigence," "attorney Heflin's potential conflict of interests" and "transcripts of the recent postconviction hearing; in determining whether there were any

issues with merit for appeal." (*Id.*) He concluded, "should the Court determine attorney Heflin can continue to represent the defendant without a conflict of interests, based upon the facts in this case, the representation of counsel rather than waiver is preferred." (*Id.*)

The court on March 11, 2013, ordered a supplemental report from the State Public Defender addressing Rodthong's argument that extraordinary circumstances warranted the reappointment of appellate counsel. (ECF No. 9-15.) In a report dated April 3, 2013, the Regional Attorney Manager reiterated that the State Public Defender would not appoint new appellate counsel for Rodthong. He noted that Rodthong's indigency was not "unexpected." It was because of his indigency that counsel was initially appointed. (ECF No. 9-16 at 1.) Rodthong never identified any conflict of interest and, in any event, disagreement over litigation strategies is not a conflict of interest or a basis to appoint substitute counsel. (ECF No. 9-16.)

On April 11, 2013, the circuit court entered an order stating:

The court can neither grant nor deny private counsel's motion to withdraw because counsel's representation is based on a contract between counsel and the defendant. To the extent that the parties ask for SPD appointment, the request is denied because the court has no authority to appoint a public defender for appellate purposes. That decision lies solely with the State Public Defender's office. The defendant's decision as to how to proceed at this point is between him and Attorney Heflin.

(ECF No. 9-17.)

Rodthong on July 19, 2013, filed a motion asking the circuit court to appoint counsel at county expense. (ECF No. 9-18.) He alleged that he "subsequently discharged

Heflin due to loss of financial support, and dissatisfaction with attorney Heflin's

Performance [sic]." (ECF No. 9-18 at 2.) The circuit court denied the motion on July 23,

2013, stating:

> The defendant has discharged two lawyers. He was apprised of the consequences of doing so in each situation. The court declines to appoint a lawyer at county expense under these circumstances. The court also finds that *State v. Violi*, 172 Wis. 2d 343 (Ct. App. 1992) does not apply here because the court does not find this to be a "rare and unusual circumstance" as the defendant claims. When a defendant initially rejects public defender representation, the court has no authority to order the public defender's office to reappoint counsel later on after private counsel does not work out or the defendant runs out of money.

(ECF No. 9-19.)

Rodthong moved for reconsideration, offering various arguments, including that

he "has not effectively waived his right to the appointment of counsel." (ECF No. 9-20 at

2.) He argued he did not know that:

> (A) The hiring of private counsel was not an intelligent decision.
> (B) Retaining private counsel would be deemed a waiver of the right to court-appointed counsel if necessary.
> (C) The circuit court would not exercise its inherent authority to appoint an attorney at county expense.
> (D) Heflin would render ineffective assistance.

(ECF No. 9-20 at 5.) "Additionally, Rodthong did not know that the funding for Heflin's

service would expire prior to completion of the postconviction-appellate process." (ECF

No. 9-20 at 5.) The circuit court denied the motion for reconsideration on August 19, 2013.

(ECF No. 9-21.)

Rodthong then turned to the court of appeals and requested that it appoint counsel to represent him. (ECF No. 9-22.) A Regional Attorney Manager from the State Public Defender submitted a report to the court of appeals recounting the history of Rodthong's requests for counsel and stating, "Evidently, after receiving those reports [from the State Public Defender], the circuit court granted Attorney Heflin's motion to withdraw." (ECF No. 9-23 at 2.) He concluded, "For the same reasons as indicated in the previous SPD reports to the circuit court, the State Public Defender will not re-appoint counsel for Mr. Rodthong in this appeal." (ECF No. 9-23 at 2.)

Rodthong responded to this report, noting in part that, "upon conclusion of postconviction proceedings, Rodthong was notified that funding for his private attorney had dried up with none further forthcoming. In fact, attorney Heflin was discharged and left with an outstanding bill for services." (ECF No. 9-24 at 4.)

The court of appeals on December 9, 2013, denied Rodthong's motion. It noted that the issue is really a matter to be addressed as part of his direct appeal, but the court had discretion to grant the motion now. It concluded:

> Rodthong has not demonstrated that the circumstances here warrant a discretionary appointment of counsel. Rodthong does not show that the substantive issues are particularly novel or exceptionally complicated. Accordingly, we are not persuaded that the necessities of the case or the interests of justice and public policy require the appointment of counsel in advance of briefing.

(ECF No. 9-25 at 2.)

Rodthong then filed a petition for a writ of mandamus with the Wisconsin Supreme Court asking that it order the court of appeals to appoint counsel for him. (ECF No. 9-26.) The court denied the petition. (ECF No. 9-27.)

Rodthong argued in his brief to the court of appeals that he was denied his right to counsel on appeal. (ECF No. 9-2 at 32-41.) The court of appeals rejected his argument with the following explanation:

> If the SPD declines to appoint an attorney, "the [circuit] court may, in its discretion, invoke its inherent authority and appoint counsel at county expense when the necessities of the case and the demands of public justice and sound policy require appointing counsel ... to protect the defendant's constitutional right to counsel." [*State v. Kennedy*, 2008 WI App 186, ¶10, 315 Wis. 2d 507, 762 N.W.2d 412] (citation and three sets of internal quotation marks omitted, ellipsis in *Kennedy*). "An appellate court will sustain a discretionary act if the [circuit] court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *State Public Defender v. Circuit Court for Marinette Cnty.*, 172 Wis. 2d 343, 346, 493 N.W.2d 232 (Ct. App. 1992).
>
> In its decision and order denying Rodthong's motion for the appointment of an attorney, the circuit court noted that Rodthong had discharged two lawyers and was apprised of the consequences of doing so in each situation. *See State v. Jones*, 2010 WI 72, ¶4, 326 Wis. 2d 380, 797 N.W.2d 378 ("We reject … [the] argument that indigent defendants with appointed counsel have a right, under the constitutions of Wisconsin and the United States, to reject appointed counsel in favor of substitute counsel."). The circuit court further found that there were no rare or unusual circumstances that warranted the appointment of an attorney. We conclude that the circuit court properly exercised its discretion in arriving at this conclusion.

(ECF No. 1-3, ¶¶ 24-25.)

The respondent argues that the state court rejected Rodthong's claim on adequate and independent state law grounds. (ECF No. 13 at 9-11.) The respondent also argues that Rodthong forfeited his claim that he did not validly waive his right to counsel on direct appeal. (ECF No. 13 at 11-14.) For present purposes, the court will presume that Rodthong fairly presented and exhausted a claim that he did not waive his right to counsel on appeal.

Rodthong relies in large part on *Jones v. Berge*, 246 F. Supp. 2d 1045 (E.D. Wis. 2003), a similar case that thoroughly outlines the relevant law. In *Jones*, the court conditionally granted the petitioner a writ of habeas corpus, concluding that the petitioner did not knowingly waive his right to counsel on appeal. However, critical to the decision in *Jones* was the fact that Jones proceeded without counsel only because he fundamentally misunderstood his options. Jones's appointed lawyer informed him that he did not believe he had any meritorious appellate issues. Before his appointed lawyer could explain the no-merit procedure to him, Jones fired him, and his attorney took no further action. When Jones asked the court of appeals for a new attorney, the court refused to appoint one, and said he could either let his prior attorney file a no-merit report, proceed pro se, or abandon his appeal. *Id.* at 1048. But it did not explain the no-merit procedure to him. In fact, no one explained the no-merit procedure to Jones, and he incorrectly believed that it was the equivalent to him giving up his right to appeal. *Id.* at 1049. Therefore, he elected to proceed pro se, all the while asking the court to appoint counsel

to represent him. The court's discussion and analysis all followed from this fundamental defect.

Unlike Jones, Rodthong's appointed attorney advised him about the no-merit procedure, including Rodthong's right to respond to the attorney's no-merit report, and the fact that the court would review Jones's response. (ECF No. 9-2 at 55; *compare Jones*, 246 F. Supp. 2d at 1057.) He also explicitly told Rodthong that, if he fired his appointed attorney in favor of retained counsel, he "would not get another appointed attorney in this case." (ECF No. 9-2 at 55.) Despite this warning, Rodthong fired his appointed lawyer anyway and hired Heflin.

Rodthong then became dissatisfied with Heflin and, despite having been told that he would not get a new lawyer appointed to represent him, told Heflin he was fired. (ECF No. 9-10 at 2.) But the court did not allow Heflin to withdraw without first thoroughly advising Rodthong of the consequences of his decision to terminate Heflin. The court reiterated that Rodthong would not get a new appointed attorney and, consistent with *Faretta v. California*, 422 U.S. 806, 835 (1975), explained in detail the risks of self-representation. (ECF No. 9-13.) The fact that Rodthong was explicitly informed of the perils of self-representation further distinguishes this case from *Jones*. *See Jones*, 246 F. Supp. 2d at 1057 ("There is no evidence in the record that petitioner was advised, orally or in writing, of the pitfalls of self-representation.").

Not wanting to either continue with Heflin or proceed pro se, Rodthong persisted in arguing that the court should appoint new counsel to represent him. (ECF Nos. 9-14; 9-18.) Although the court appropriately refused to appoint new counsel, Rodthong discharged Heflin anyway.[4] This choice, opting for no lawyer over Heflin, again further distinguishes *Jones*. *Cf. Jones*, 246 F. Supp. 2d at 1054 ("The fact that he may not have been entitled to another lawyer does not mean that he was entitled to no lawyer.") (discussing *Hendricks v. Zenon*, 993 F.2d 664, 670 (9th Cir. 1993)).

The record also supports the finding that Rodthong was competent to represent himself on his appeal. The circuit court explicitly so found based on its review of his filings. (ECF No. 9-21.) This court's review of the record as a whole confirms this conclusion. Although the record states that Rodthong received the assistance of an interpreter in court (ECF No. 12-3), there is no indication that any language barrier impaired his ability to represent himself. To the contrary, when compared to the quality of pro se filings the court generally encounters, Rodthong's filings are especially clear, articulate, and well-researched. Although Rodthong states he received assistance from other inmates, the character and extent of any assistance is unclear. In any event, the court

---

[4] The court notes that the record does not appear to contain any order formally granting Heflin leave to withdraw. Whether formally granted leave of the court, there is no dispute that Rodthong discharged Heflin. (ECF No. 9-2 at 33 (Rodthong stating, "Heflin was discharged."; "Upon discharging counsel Rodthong pro se moved the circuit court to appoint new counsel…."); 9-4 at 7 (…attorney Heflin was discharged…"); 9-18 at 2 ("Rodthong subsequently discharged Heflin …."); 9-24 at 4 ("… attorney Heflin was discharged ….").) Rodthong does not argue, for example, that Heflin abandoned him.

notes that the quality of Rodthong's filings has been consistent over the years he has been representing himself.

In sum, the record is far from silent with respect to Rodthong's waiver. *Cf. Carnley v. Cochran*, 369 U.S. 506, 516 (1962) ("Presuming waiver from a silent record is impermissible."). Rather, the record demonstrates that Rodthong was advised and re-advised of the risks and consequences of firing, first, his court-appointed attorney and, then, his privately retained attorney. This record amply supports the conclusion that Rodthong knowingly and intelligently waived his right to counsel on appeal. Rodthong might have come to regret his decisions, but that hindsight does not render those decisions unknowing or unintelligent. Consequently, the court will recommend that his petition be denied.

**IT IS THEREFORE RECOMMENDED** that the petition for a writ of habeas corpus be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b)(2) whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 12th day of June, 2019.

WILLIAM E. DUFFIN
U.S. Magistrate Judge